Syllabus.

5 Pa. 189; Dailey v. Green, 15 Pa. 128; Brennan's Est., 65 Pa. 18; Gannon v. Fritz, 79 Pa. 307; Yates v. Meadville Bor., 56 Pa. 21; Charlton v. Allegheny City, 1 Gr. 208; Lawrance v. Borm, 86 Pa. 226.

PER CURIAM:

This was an appeal by the defendant from the refusal of the court below to open and set aside a judgment entered against him for want of an affidavit of defence. The action was a scire facias sur municipal lien. It was alleged that the judgment was not authorized by any law or rule of court; that an affidavit of defence is not required in a case of this description. The learned judge below, however, cites their rule of court in his opinion, which we think is broad enough to include this form of action. We are not disposed to criticise the view taken by the court of its own rules. There was ample opportunity afforded the defendant to put in his defence if he had any; and, as he has not made such affidavit, we may fairly infer that he has no legal defence to the claim of the city.

Judgment affirmed.

---

# PHILIP JONES v. J. B. PIERCE.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF LUZERNE COUNTY.

Argued April 16, 1890—Decided May 5, 1890.

(a) In an action of ejectment for lands held by the defendant under a sheriff's deed made upon a sale under judgments in his favor against the ejectment plaintiff, the latter sought recovery on the ground that the transaction was in effect a mortgage, and that he was then entitled to a re-conveyance of the lands:

1. The evidence affecting the defendant's title, as an absolute conveyance, not being sufficiently clear, explicit and unequivocal, in respect of the facts sought to be established and relevant to the issue, it was not error for the trial judge, sitting as a chancellor, to direct a verdict for the defendant.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and MC-COLLUM, JJ.

Charge of Court below.

No. 352 January Term 1890, Sup. Ct.; court below No. 52 January Term 1887, C. P.

On November 24, 1886, Philip Jones brought ejectment against J. B. Pierce. Issue.

At the trial on May 18, 1888, it was shown in substance as follows:

In 1878, there were three judgments against Philip Jones, the plaintiff in this action, which were liens upon his estate in the lands in controversy, that estate being an equitable interest in him as a purchaser from Abraham Nesbit under a contract upon which about $250 purchase money remained unpaid. Two of these judgments were in favor of J. B. Pierce, the defendant in this action, and the other in favor of Davis & Co. They were all in charge of Mr. J. A. Opp, as attorney of record. Executions upon all the judgments were levied upon the lands in controversy, and, at a sheriff's sale on July 20, 1878, Jones's interest in the lands in dispute was sold for $30 to Mr. Opp. The sheriff's deed to Mr. Opp was acknowledged and delivered on September 16, 1878, and on September 30, 1878, Mr. Opp conveyed the same interest to J. B. Pierce, for $30, Mr. Pierce having paid to Mr. Opp the amount due upon the Davis & Co. judgment. On receiving the deed from Mr. Opp, Mr. Pierce took and remained in possession of the lot and the houses thereon; leased the houses to tenants, among them Mr. Jones himself; received the rents; was assessed with and paid the taxes; paid the insurance; made improvements and erected one new building costing $1,600; and, on November 5, 1883, paid the balance of purchase money due to Nesbit, from whom he then received the legal title.

To break down the title of Mr. Pierce thus shown, the plaintiff Jones introduced testimony and raised questions sufficiently appearing in the charge to the jury, WOODWARD, J.:

On November 23, 1886, some years after the sale to Pierce, Philip Jones brought this action of ejectment, to recover the land in question. In support of his claim of title he has undertaken to show that the sheriff's sale on the Pierce judgment was made under an arrangement and agreement between himself and Pierce, which was, in substance, that Pierce was to

### Charge of Court below.

take the title and hold it until certain indebtedness of Jones
to him was liquidated and paid off, and that then the land was
to be re-conveyed by him to Jones, and all the interest of the
former was to be extinguished and the same was to be wholly
vested in Jones; in other words, that the title obtained through
the sheriff's sale and the conveyance by Mr. Opp was to be
held as a security for the payment of certain indebtedness, and
for that purpose only, and that the deed, although absolute on
its face, was, in fact and effect, a mortgage merely, by reason
of the contract between the parties.

In order to establish this claim, the plaintiff has called
numerous witnesses; first, the plaintiff himself, who swears
that some three or four months before the sheriff's sale, Pierce
was pressing him for money due. He replied that owing to
the hard times and to his own embarrassment he could not pay.
Pierce said to him, " If I had this property I could make it pay
more than you are receiving for it, and the better way will be
for me to take the title, and lease the houses to you and others,
and apply the rent to the indebtedness." That subsequently
they went to the house of Jones, and there in the presence of
Mrs. Jones, the wife, and one, perhaps two, of the sons, talked
this matter over again, and that Pierce said that if the arrange-
ment were made, Jones would get the property back, etc. That
this was agreed to; that Pierce took the property by reason of
the sheriff's sale and the conveyance from Opp, and continued
to collect the rents; that he, Jones, has demanded, several
times at least, the property back, and finally in 1885, notified
Pierce that he would now see what could be done, presumably
by legal proceedings. These negotiations, as far as the evi-
dence shows, began in the fall of 1878, and seem to have con-
tinued down to 1885. That a sale was made in March, 1878,
which was set aside at the instance of Jones himself, as he ex-
plains, because Pierce had neglected or refused to give him the
agreement for a re-conveyance. Then came a second sale, the
sheriff's sale of July, 1878, although no written agreement
seems to have been made meanwhile. The plaintiff then or
about that time went west, and his family remained as tenants
in one of these houses. He returned from the west in 1883.
That substantially is the testimony of the plaintiff, gentlemen,
in this case. To corroborate this evidence, the plaintiff calls

his wife, Mrs. Jones, and she, as you will remember, stated that she was present and heard the conversation referred to by the plaintiff as to the nature of this transaction, and corroborates her husband to a certain extent, certainly. Then Griffin Jones, a son of the plaintiff, was called, and he testified that he was present in the room at the time of the conversation between Jones, his father, and Pierce, and he corroborates the statement of Mr. Jones in regard to what occurred there at the time.

Now, gentlemen, this is all the evidence of a direct character in this case, as to what occurred between the parties before the sheriff's sale, in regard to this agreement. We have other evidence showing that Philip Jones was indebted to Pierce ; that Pierce had made payments to him from time to time, had advanced money to him in one form and another, and that a judgment of 26th of February, 1875, was given as security for these advances, the amounts of which are shown by a paper of the same date as the judgment itself. We have also other statements of the accounts between the parties, of later dates, showing the nature and amount of the indebtedness of Jones to Pierce. The other testimony in the case, on the part of the plaintiff, consists of the evidence of several witnesses, namely, Mrs. Markham, Mrs. Powell, George Richards, Mrs. Price and William Price, as to declarations made by the defendant after the sheriff's sale, to the effect that he Pierce did not want this property, but only the money that was coming to him, and, in the one case, that he only owned the property until his debts due from Jones were paid to him.

We have then on the part of the defendant, some rebutting testimony. Mr. Pierce is called as a witness in his own behalf and for the purpose of rebutting the testimony of the plaintiff. He explains to you all his transactions with Jones, his advances of money to Jones to enable him to go to the west. He states that after Jones's return there was a balance due him, Pierce, over and above the collections which he had made meanwhile, etc. He denies utterly the allegation that there was any conversation amounting to a contract, or any talk at all, before the sheriff's sale, with Jones, except that he made statements to Jones that he wanted his money and must have it. He also explains to you the payment of the judgment of Davis & Co. represented by Mr. Opp, and of the building association claim.

Charge of Court below.

He states, further, the improvements he has put upon the property and what expenses he incurred in maintaining the houses in proper condition. He also denies that there was any talk between him and Jones, after the sale, about the application of the rents, and states that no account at all was kept by him with Jones, after the sale; that he frequently met Jones, but that this subject was not alluded to between them, after the sheriff's sale. We have also some evidence of the value of the property, the purpose of which was to show that the debt owing, as it was claimed, by Jones to Pierce, was equal or nearly equal to the market value of this property at the time of the sale.

Now, gentlemen, I have tried, in a general way, and fairly, to state this case as it appears on the one side and the other, from the evidence. It is now my duty to instruct you on the law of the case as I understand it. And we say to you at the outset, as matter of law, that a deed purporting to be an absolute conveyance may be shown by parol evidence to be merely security for a debt. But, in order to effect this result, the evidence must be clear, explicit and unequivocal, and the agreement must be contemporaneous with the execution and delivery of the deed, or substantially so. If the parol evidence be insufficient to move a chancellor to compel a re-conveyance of the land in a proceeding in equity, it is not sufficient to justify a recovery in ejectment. In an action of ejectment founded upon an equitable title, it is the duty of the judge to consider and to weigh the facts for himself; and, if he is of the opinion that the evidence does not make out a case which would induce a chancellor sitting in equity, to decree a conveyance, it is his further duty to give the jury what are called binding instructions on the subject. In this connection I will read a brief extract of a recent case decided in 1885 by our Supreme Court. I refer to Null v. Fries, 110 Pa. 528. . . . .

We cannot say that the evidence in this case, to establish the allegation that the deed in controversy, under which the defendant claims title, is a mortgage and not an absolute conveyance, is clear, explicit and unequivocal. Because first, the agreement testified to by the plaintiff and corroborated to some extent by his wife and son, and by them only, is not, strictly speaking, contemporaneous with the sale, nor sufficiently clear

and explicit in its terms, to satisfy the rule of law to which we have referred. Secondly, the sheriff's sale was made to Mr. Opp upon three several executions, two of which were issued upon judgments held by Pierce against Jones, and one of which was issued upon a judgment held by another party; and there is no sufficient evidence that Pierce controlled the executions in the sheriff's hands other than his own. The plaintiff in this other judgment was not a party to the alleged arrangement that the sheriff's deed was to be in effect a mortgage merely. Thirdly, it is not clear from the evidence that the defendant has been fully repaid for all the advances and payments made by him for the plaintiff, including taxes, insurance and reasonable repairs and improvements, and advances made since the statement shown in evidence. Fourthly, the parol declarations made by Pierce to various parties, after the sale, are not of themselves sufficient, under the adjudicated cases, to justify the conclusion that the deed was to be considered a mortgage.

—The court then directed the jury to return a verdict in favor of the defendant. A verdict having been returned as directed, and judgment entered thereon, the plaintiff took this appeal assigning, inter alia, the order directing the jury to return a verdict for the defendant, for error.

*Mr. T. R. Martin* (with him *Mr. H. W. Palmer*), for the appellant.

Counsel cited: Null v. Fries, 110 Pa. 528; Todd v. Campbell, 32 Pa. 250.

*Mr. William S. McLean* (with him *Mr. J. A. Opp*), for the appellee.

Counsel cited: Plumer v. Guthrie, 76 Pa. 441; Burger v. Dankel, 100 Pa. 113; Nicolls v. McDonald, 101 Pa. 514; Kellum v. Smith, 33 Pa. 158; Barnet v. Dougherty, 32 Pa. 371; Jackman v. Ringland, 4 W. & S. 149; Carhart's App., 78 Pa. 100; Pancake v. Cauffman, 114 Pa. 113; Washabaugh v. Stauffer, 81* Pa. 497; Lance's App., 112 Pa. 456.

PER CURIAM:

Judgment affirmed.